UNITED STATES, Appellee

v

BENJAMIN J. GUERRA, Airman Second Class,
U. S. Air Force, Appellant

13 USCMA 463, 32 CMR 463

No. 16,228

February 21, 1963

Major William A. Crawford, Jr., argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel E. Henderson, Jr., and Colonel Joseph E. Krysakowski.

Major James Taylor, Jr., argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel John C. Wiley.

FERGUSON, Judge:

Brought to trial before a general court-martial convened by the Commander, 41st Air Division, the accused was found guilty of perjury, in violation of Uniform Code of Military Justice, Article 131, 10 USC § 931, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the grade of airman basic. Setting aside the reduction, the convening authority otherwise approved the sentence. The board of review affirmed, and we granted accused's petition for review on issues involving whether his conviction was barred by the doctrine of *res judicata*; whether the evidence is legally sufficient to support the findings of guilty; and whether the testimony of a single witness to the falsity of accused's answer was sufficiently corroborated by evidence of his unsworn oral statements.

On May 18, 1961, Airman Guerra was tried by general court-martial at Misawa Air Base, Japan, for larceny of 228 white sheets, on or about December 3, 1960, property of the United States, and acquitted. On June 7, 1961, an Airman Dube was brought to trial on an identical charge and specification. Guerra was called as a prosecution witness and duly sworn. After examination by the trial counsel, the law officer conducted the following examination:

"Q Airman Guerra, do you know what Airman Dube is charged with today?

"A Yes, sir.

"Q Do you know anything about this offense?

"A No, sir."

On October 17, 1961, Guerra was arraigned and tried upon the charge of perjury now before us, which is based upon his negative answer to the second question set out above. The prosecution established that he had so testified before Dube's duly constituted court-martial and thereafter sought to prove the falsity of his answer.

One Ishii, a Japanese bartender, was called and declared under affirmation that he was acquainted with accused and Airman Dube. Around December 5, 1960, the two men visited him at the Geneva Coffee Shop. Later, a blue, medium-sized Air Force truck with a canvas top parked in front of his house. He, Airman Dube, and accused unloaded seventeen or eighteen paper wrapped bundles of sheets and carried them into Ishii's house. Each bundle contained twelve sheets. The three men then repaired to Ishii's bar. There, in accused's presence, Dube and Ishii bargained over the price of the sheets and settled upon a payment of 200 yen per sheet.

Subsequently, accused met Ishii in the Gondola Bar, pushed him against the wall, and said, " 'Why did you mention my name?' " Dube, who was also present, intervened. Accused took Ishii into the latrine and "told me that he would give me some money with the condition that I should not mention his name at court."

Dube's girl friend, one Kazuko Kon, had a conversation with accused "as connected with sheets." He told her he was in trouble " 'because of some sheets and I may have to go to OSI for interrogation.' " In another, later conversation, he told Kazuko "that he told to OSI everything as to sheets." In another conversation, Guerra "said something about having a canvas top put on the truck and a handle of the driver [sic] of the truck was installed so that OSI cannot identify the truck." In May or June, Kazuko met accused "by accident" and he informed her, " 'I was going to court, but I have beaten the court, and I'm such a smart boy, and I can probably go back to the States before long.' "

Kazuko denied being angry with accused or threatening to get either him or Dube "in trouble." She was, however, "feeling a bitterness," because Dube's wife had joined him in Japan.

In a voluntary and spontaneous statement to his commanding officer, made in December 1960, accused declared that

**465**

he had assisted Airman Dube in taking sheets from a Government warehouse. The bundles were removed from storage bins, placed on a privately-owned truck, and driven to a point near where their sale was to be transacted. At "'some distance'" from the meeting place, "'he got out of the vehicle to watch for air police or other military while Dube went on down to the point.'" According to Guerra, Dube finished the transaction, picked him up, and returned him to the squadron area.

Special Agents Fravel and Sprague testified that accused came to their office on December 22, 1960, accompanied by Airman Dube. Referring them to a statement which he had executed on the previous day, he asked that they delete any reference which he had made to Dube, as "he wanted to relieve Airman First Class Dube of any responsibility in the loss of Government sheets that were taken from the Government warehouse." The previous statement was true, but "Dube was married and had a family, and he didn't want him involved." Although accused desired to make a new statement, none was executed.

For the defense, an Airman Tobias testified he had heard Kazuko Kon state angrily that she would "'get Dube,'" and that she "was angry with Guerra . . . because of something personal with Dube." Tobias was a friend of the accused, and both worked in the warehouse area.

First, accused contends that his acquittal of larceny and invocation at his perjury trial of the doctrine of *res judicata* bars his conviction for allegedly testifying falsely in the trial of Airman Dube. We may summarily dispose of this matter. Accused's position overlooks the fact that the principle in question applies only to "any issue of fact or law put in issue and finally determined . . . between the same parties." Manual for Courts-martial, United States, 1951, paragraph 71b; United States v Martin, 8 USCMA 346, 24 CMR 156; United States v Hooten, 12 USCMA 339, 30 CMR 339. Here, ac-

cused was not a party to the trial in which he is alleged to have perjured himself. That litigation was between Airman Dube and the United States. Moreover, the issue to be resolved in connection with Guerra's present trial is his knowledge of the offense, an issue clearly not settled in the earlier controversy over his guilt of the same crime. United States v Martin, supra. Clearly, therefore, there is no basis for application of the doctrine of *res judicata* in the current proceedings, and we pass to the other questions before us.

Ordinarily, sufficiency of the evidence in law to support findings of guilty turns only on resolution of the question whether there is in the record some competent evidence from which the members of the court-martial were entitled to find beyond a reasonable doubt the existence of every element of the crime charged. United States v O'Neal, 1 USCMA 138, 2 CMR 44; United States v Brand, 10 USCMA 437, 28 CMR 3; United States v Groom, 12 USCMA 11, 30 CMR 11. Perjury, however, is an offense which requires invocation of a special rule, the so-called "two witness" principle. Thus, we have recognized as accurate the statement in the Manual, supra, at page 376:

"The falsity of the allegedly perjured statement cannot, without corroboration by other testimony or by circumstances tending to prove such falsity, be proved by the testimony of a single witness."

See United States v Gomes, 3 USCMA 232, 11 CMR 232; United States v Walker, 6 USCMA 158, 19 CMR 284; and the United States v Martin, supra.

The same rule obtains in the ordinary Federal courts. Weiler v United States, 323 US 606, 89 L ed 495, 65 S Ct 548 (1945); Warszower v United States, 312 US 342, 85 L ed 876, 61 S Ct 603 (1941); Hammer v United States, 271 US 620, 70 L ed 1118, 46 S Ct 603 (1926). Nor will circumstantial evidence alone suffice to prove that the allegedly perjurious testimony was false. There must be at

least one witness who "must testify of his own knowledge that defendant's sworn statement was false." United States v Nessanbaum, 205 F2d 93 (CA 3d Cir) (1953); Radomsky v United States, 180 F2d 781 (CA 9th Cir) (1950); Spaeth v United States, 218 F 2d 361 (CA 6th Cir) (1955), same case, 232 F2d 776 (CA 6th Cir) (1956); Phair v United States, 60 F2d 953 (CA 3d Cir) (1932); Clayton v United States, 284 Fed 537 (CA 4th Cir) (1922). Cf. United States v Walker, supra; United States v Goldberg, 290 F2d 729 (CA 2d Cir) (1961).

In the case before us, the United States duly established that the accused had testified as alleged before a legally constituted and convened general court-martial after having been administered the requisite oath in proper form. Our sole concern is whether it also succeeded in offering, qualitatively and quantitatively speaking, sufficient evidence of the falsity of that testimony. We necessarily conclude that it did not.

As noted above, the testimony of the one witness, aside from being corroborated, must directly contradict the accused's statement. It is not sufficient if the falsity must be inferred from his testimony. Thus, in United States v Nessanbaum, supra, at page 95, Chief Judge Biggs said:

"The distinction is clear between the testimony required of the 'witness' (or witnesses) under this standard and 'corroborating circumstances.' The witness must testify of his own knowledge that the defendant's sworn statement was false. The common situation is where the defendant has given a false version of a transaction with another person and the other person refutes him. See, e. g., Vetterli v United States, 9 Cir, 1952, 198 F2d 291; United States v Palese, 3 Cir, 1943, 133 F2d 600. Corroborating circumstances, on the other hand, merely support the inference that the defendant was lying. These circumstances, of course, may also be proved by oral testimony."

The rule is set forth in Corpus Juris Secundum as follows:

". . . Moreover, it has been held that the testimony of the single witness must directly contradict the statement of accused assigned as perjury, or, stated differently, must contradict in definite and positive terms the statement of accused. However, it has been held that the required testimony is not limited to a detail in ipsissimis verbis of the statement assigned as perjury, but includes any positive testimony of a contrary state of facts from that sworn to by him, or which is absolutely incompatible with his innocence or physically inconsistent with the facts sworn to by him." [70 CJS, Perjury, § 69.]

In addition, it has been noted:

"The degree and character of proof required in a perjury prosecution is different than in an ordinary criminal case. It is clear that there are two essential elements of proof. First, the statements made by the defendant must be proven false. Secondly, it must be proven that the defendant did not believe these statements to be true. It is clear that the objective falsity of the statements made must be established in conformity with the 'two witness rule' which is peculiar to perjury prosecutions." [United States v Magin, 280 F2d 74, 76 (CA 7th Cir) (1960).]

The so-called "two witness" rule is, of course, applicable only to proof of the falsity in fact of the alleged perjured testimony. The second element, accused's knowledge of the falsity of his testimony, can be established circumstantially. See United States v Nicoletti, 310 F2d 359 (CA 7th Cir) (1962), and cases cited therein.

In the record before us, the accused, in essence, denied any knowledge of the theft of 228 white sheets, property of the United States, on or about December 3, 1960. To contradict this, the Government offered Ishii's testimony

that accused and Dube assisted, on or about that date, in unloading seventeen or eighteen bundles of twelve sheets each and placing them in Ishii's house. The sheets were taken from a blue Air Force truck. Later, Ishii bargained with Dube and paid him 200 yen for each sheet. We are unable to see in what manner Ishii's testimony directly contradicts accused's sworn denial of knowledge of the *theft* of these items. True it is that accused's presence and assistance in handling the bundles is a circumstance which, *assuming the items were stolen*, might permit an inference that he participated in the taking. But we may not make that assumption on the record before us, for all that is shown by the one witness is the transaction at Ishii's house, which is perfectly consistent in every way with the accused's lack of any knowledge of the actual larceny.

In short, what we have here is an admission by the accused that he knew the nature of the charge against Dube to be larceny of the sheets, denial of any knowledge of this offense, and proof that he helped Ishii and Dube unload sheets from a truck. The two statements are not in opposition one to the other, nor does Ishii directly and necessarily contradict accused's testimony. Yet, such is the standard by which the falsity of accused's oath must be proven.

It might appear, at first blush, that our holding in this case is inapposite to the decision in United States v Nicoletti, supra, where the court held as "Both elements of the offense . . . relate[d] to or involve[d] defendant's state of mind, . . . the so-called two witness rule was not applicable."

In *Nicoletti,* the defendant was interviewed by two Federal Bureau of Investigation agents at which time he allegedly denied being acquainted with certain people including one Anthony Accardo. Later, at Accardo's trial for false statements in his income tax returns, Nicoletti testified that he could not recall the interview with the agents of the FBI. While holding, as quoted above, that the "two witness" rule did

not apply in that case, the court noted that the two FBI agents who interviewed Nicoletti testified as to the fact of the interview and the statements made by Nicoletti, thus establishing, by direct evidence, the basis for the charge of perjury.

In the case at bar, however, such testimony is not present. There is in this record no *direct* evidence of the larceny. True, there is evidence from which "in an ordinary criminal case" a larceny might be inferred, but "[t]he degree and character of proof required in a perjury prosecution is different." United States v Magin, supra. Accused was charged with denying *knowledge* of "this offense" (larceny). The requisite proof, whether direct or circumstantial, must go to the larceny and not to a circumstance from which larceny might be inferred.

Reference to the *Nessanbaum* case, supra, provides an apt illustration of our point. There, the defendant testified in De Carlo's trial that he could not identify De Carlo as the man who had rented his barn. The Government proved such testimony. To establish its falsity, five witnesses testified that Nessanbaum had previously identified De Carlo as the man who had rented his barn from a photograph exhibited to them. Two witnesses declared that he had personally identified De Carlo as his tenant, and some had seen the latter on Nessanbaum's farm near the barn. De Carlo himself testified but only to identify the picture used by the other witnesses.

The court found the evidence insufficient to establish Nessanbaum perjured himself, pointing out that "not one witness was called who testified of his own knowledge either that *Nessanbaum had in fact rented his 'barn' to De Carlo* or that he knew De Carlo *as the tenant in his 'barn.'* " (Emphasis supplied.) United States v Nessanbaum, supra, at page 97.

And in Umbriaco v United States, 258 F2d 625 (CA 9th Cir) (1958), the defendant's conviction of perjury was set aside on similar grounds. There, she had denied, under oath, engaging in acts of prostitution at various places,

although she admitted having sexual intercourse for money with a friend. C testified that he engaged in acts of intercourse with the defendant at various hotels during the period charged and paid her for each act. In reversing, the court said, at page 627:

> "We are unable to find that witness Campbell refuted anything that appellant had directly denied. Therefore, the testimony of witness Campbell being eliminated as furnishing the direct evidence of at least one witness necessary in a perjury conviction, we are left with the unsworn oral admissions of appellant that she lied under oath in the White Slave trial, with strong corroboration.

> "The Government has argued that the circumstantial evidence in this case was of such a character as to justify its characterization as direct evidence. *We fail to see this because proof of the commission of the essential overt acts necessary for a woman to operate as a prostitute is left to inference.*" [Emphasis supplied.]

See also Hart v United States, 131 F2d 59 (CA 9th Cir) (1942), and Radomsky v United States, supra.

The sum and substance of the matter before us is that the United States failed to produce the necessary witness to establish directly that the sheets with which accused was shown to be involved were, to accused's knowledge, stolen. There is, therefore, no contradiction between Ishii's testimony and that of the accused, and, accordingly, the element of falsity was not made out.

We have not reached this decision without taking careful note of the Government's argument that, in the context of all his testimony, it was obvious that the question put to the accused and his negative answer related to the sheet transaction with Ishii. We point out that the record does not show any testimony by the accused other than the questions and answers set out supra, for, rightly or wrongly, the law officer excluded the balance from evidence. Moreover, for reasons best known to the United States, he was not charged with falsely answering these specific inquiries but only with the generalized query put by the law officer.

In like manner, we reject the notion that we may look to the oral admissions of accused offered to corroborate Ishii in order to supply the necessary contradiction of accused's testimony. So to act would eliminate the positive requirement that at least one witness testify directly to the falsity of the allegedly perjured testimony and permit accused's conviction on circumstantial evidence and his confession alone. Such is impermissible. Weiler v United States; Spaeth v United States; Umbriaco v United States, all supra.

In sum, then, we conclude that, under the evidence in this case and the rules peculiar to the crime of perjury, there is no single witness who, of his own knowledge, was able directly to contradict the accused's allegedly false testimony. We need not, therefore, concern ourselves with the sufficiency of accused's oral admissions to corroborate Ishii's testimony. Cf. United States v Goldberg, supra; Vetterli v United States, 198 F2d 291 (CA 9th Cir) (1952). The findings of guilty must, accordingly, be set aside.

The decision of the board of review is reversed, the findings of guilty are set aside, and the Charge and its specification are ordered dismissed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

According to the principal opinion, the Government was required to produce at least one witness to testify directly that the sheets "were, to accused's knowledge, stolen." In my opinion, the Government was not required to show any such knowledge. The question put to the accused was not whether he knew that Dube actually stole Government sheets; but whether he knew "anything" about the circumstances of the *charge* that Dube had stolen them. The accused's negative answer meant no less than that he had no knowledge whatever about anything that would shed light on the *charge* that Dube stole Government sheets.

Ishii's testimony flatly and unequivocally contradicts the accused's answer. It shows that the accused knew, and even participated, in Dube's removal of sheets from an Air Force truck, and that he then turned them over to a Japanese civilian. To conclude that this testimony does not establish that the accused knew "something" about the facts underlying the charge of larceny against Dube absolutely amazes me. I would affirm the decision of the board of review.