**UNITED STATES**

v.

**Joie L. GILES, Operations Specialist Third Class (E–4), U.S. Navy.**

**NMCM 9500903.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 1 Oct. 1998.

Decided 23 April 2003.

Lt Jeffrey K. Van Nest, JAGC, USNR, Appellate Defense Counsel.

Lt Travis Owens, JAGC, USNR, Appellate Defense Counsel.

LCDR Joann W. Melesky, JAGC, USNR, Appellant Government Counsel.

Lt James Grimes, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, OLIVER and FINNIE, Senior Judges.

LEO, Chief Judge:

The appellant was first convicted in 1994 at a general court-martial before officer and enlisted members of attempted possession of lysergic acid diethylamide (LSD) and attempted distribution of LSD, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880, and was awarded a bad-conduct discharge and reduction to pay grade E–1. After reviewing the record, we affirmed the findings and the approved sentence. *United States v. Giles,* No. 9500903, 1996 WL 927698 (N.M.Ct.Crim.App. 8 Aug. 1996)(unpublished decision). Our superior court reversed the decision, holding that the military judge had abused his discretion by denying the defense challenge of a court-martial member for cause. *United States v. Giles,* 48 M.J. 60, 63 (1998). The findings and sentence were set aside and a rehearing was authorized.

The appellant was retried in 1998 before a special court-martial on the previous charges of attempted possession of LSD with the intent to distribute and distribution of LSD. In addition, a charge of perjury, under Article 131, UCMJ, 10 U.S.C. § 931, was added. Contrary to her pleas, the appellant was convicted by officer and enlisted members of all charges and awarded a bad-conduct discharge. The convening authority approved the adjudged sentence. After examining the record of trial, the assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law

and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. Speedy Trial

The appellant contends that the military judge erred by failing to find that the Government had violated her right to a speedy trial under RULE FOR COURTS-MARTIAL 707, MANUAL OF COURTS-MARTIAL, UNITED STATES (1998 ed.). We disagree.

In the case of a rehearing, an accused must be brought to trial within 120 days of the time that the convening authority receives both the record of trial and the appellate court decision authorizing or directing a rehearing. R.C.M. 707(b)(3)(D). For speedy trial purposes, an accused is brought to trial upon arraignment. R.C.M. 707(b)(1). The remedy for the Government's failure to comply with the 120–day rule is dismissal of the affected charges, with or without prejudice. R.C.M. 707(d).

The convening authority in this case received the record and appellate court decision on 4 May 1998. As a result, the appellant had to be brought to trial by 1 September 1998. At the time, she was on appellate leave from her first trial and was living in New Jersey, which required that arrangements be made to recall her to active duty. On 26 August 1998, the convening authority granted the trial counsel's request for a delay of 30 days that would be excluded from the 120–day requirement to bring the appellant to trial. The appellant was ordered to report to the Transient Personnel Unit, at Naval Station, San Diego, California, by 28 August 1998. She reported a day later, on 29 August, and was immediately served with a copy of the charges. When the Government attempted to arraign the appellant on 1 September, the appellant asserted her right under Article 35, UCMJ, 10 U.S.C. § 835, to a 3–day waiting period once charges are served before she can be brought to trial. As a result, she was not arraigned until 2 September, 121 days after the convening authority had received the case.

At trial, the appellant moved to dismiss the charges for failure to bring her to trial within 120 days, as required by R.C.M. 707(b)(3)(D). The military judge denied the motion, citing three reasons: First, appellate case law barred the appellant from attributing her exercise of the 3–day delay to the Government for speedy trial purposes. *United States v. Cherok*, 22 M.J. 438, 440 (C.M.A. 1986). Second, the convening authority did not abuse her discretion by granting the trial counsel's request for 30 days of excludable delay. Lastly, the appellant's unauthorized absence of one day in reporting for duty was not chargeable to the Government, thus bringing her arraignment within the 120–day requirement.

 The military judge's ruling on a speedy trial motion is "a legal question that is reviewed *de novo.*" *United States v. Doty*, 51 M.J. 464, 465 (1999). However, the findings of fact underlying the ruling are given "substantial deference," unless clearly erroneous. *Id.* (quoting *United States v. Edmond*, 41 M.J. 419, 420 (1995)). In this instance, we find that the military judge's findings of fact are not clearly erroneous and adopt them for purposes of reviewing his ruling on the speedy trial motion. We believe *Cherok* is dispositive of the speedy trial issue. As a result, we do not find it necessary to discuss the other bases for the military judge's ruling. In *Cherok*, our superior court stated that "Article 35[, UCMJ,] provides a shield with which an accused may prevent too speedy a trial, not a sword with which an accused may attack the Government for failing to bring him to trial sooner." *Cherok*, 22 M.J. at 440.

The appellant argues that *Cherok* is distinguishable. Her trial defense counsel mistakenly thought the 120th day fell on 2 September. Therefore, she did not intend to use the three-day delay to create a speedy trial issue. We decline to interpret *Cherok* so narrowly. The key factor in this issue is not counsel's purpose or intent with respect to the delay. It is the existence of the delay itself, regardless of the reason, that prevented the Government from bringing an accused to trial within 120 days, as required by R.C.M. 707(b)(3)(D). "An accused cannot be responsible for or agreeable to delay and then turn

around and demand dismissal for that same delay." *United States v. King,* 30 M.J. 59, 66 (C.M.A.1990). By exercising the 3–day waiting period under Article 35, UCMJ, the appellant effectively waived her right to a speedy trial under R.C.M. 707. *Id.*

## II. Severance of Charges

The appellant contends that the military judge erred by denying her motion to sever the perjury charge from the charges of attempted possession and distribution of LSD at her court-martial. We disagree.

██ Although the practice in the military is to dispose of all known charges at a single court-martial proceeding, an accused may file a motion to sever charges in order "to prevent *manifest injustice.*" R.C.M. 906(b)(10)(emphasis added). Under this rule, the military judge may sever charges to avoid "impermissible spillover [of evidence] in various ways from the proof of one offense into the trial of another offense" that would otherwise deny an accused the right to a fair trial. *United States v. Duncan,* 53 M.J. 494, 497 (2000). The appellant argued at trial that the evidence on the perjury charge would improperly bolster the Government's case on the drug charges and that the danger of improper spillover could not be cured with a limiting instruction.

The military judge denied the appellant's severance motion, finding that proof of the perjury and drug charges would involve the same evidence. He concluded that it made no sense from the standpoint of judicial economy to sever the charges. However, he indicated his intention to provide the members with an appropriate spillover instruction, as well as a cleansed charge sheet omitting any mention of the following facts: (1) the appellant was the accused in the earlier court-martial proceeding where the perjury occurred; (2) the proceeding was specifically a *general* court-martial; and (3) she was convicted at that proceeding. When the appellant later moved for reconsideration of the severance motion, the military judge modified his ruling and allowed the Government to show that the appellant was the accused in that proceeding.

██ We review the military judge's ruling on the severance motion for abuse of discretion. *United States v. Shabazz,* 52 M.J. 585, 589 (N.M.Ct.Crim.App.1999). In making our determination, we consider these factors: "(1) whether the evidence of one offense would be admissible proof of the other; (2) whether the military judge has provided a proper limiting instruction; and (3) whether the findings reflect an impermissible crossover." *United States v. Southworth,* 50 M.J. 74, 76 (1999).

██ Unlike a case involving the need to keep separate the evidence on similar, but unrelated, charges, the evidence here of attempted possession and distribution of LSD was clearly relevant, and therefore admissible, to prove perjury. This evidence was crucial in determining whether or not the appellant had falsely testified in denying any knowledge that the substance giving rise to the drug charges was LSD. We have considered the Federal court cases upon which the appellant has predicated much of her argument. We note that in Federal courts, unlike military courts, there is no policy to try all known charges in one proceeding. *United States v. Haye,* 29 M.J. 213, 215 (C.M.A.1989)("[M]ilitary practice regarding 'joinder of offenses' stands in contrast to federal criminal procedure.").

With respect to the military judge's instructions, we find that the members were adequately informed of the limited use of this evidence. The military judge instructed the members on three separate occasions prior to their deliberations that the evidence of the appellant's testimony at her prior court-martial was to be considered solely for the perjury charge and the fact that she had been tried earlier could not be considered for any purpose in determining her guilt on the current drug charges. One of those occasions was in response to a member's written questions, in Appellate Exhibit XXXVII, about the outcome of the earlier trial. The military judge ensured in that instance that the member who asked the questions, as well as the other panel members, understood the limiting instruction that he had just given. *See* Record at 516–17. In the absence of evidence to the contrary, we presume that the

members followed these instructions. *United States v. Orsburn*, 31 M.J. 182, 188 (C.M.A.1990).

Finally, contrary to the appellant's argument, the findings do not reflect an *impermissible* crossover of evidence from the perjury charge to the drug charges. The Government introduced testimony from two undercover agents with the Naval Criminal Investigative Service (NCIS) that the appellant attempted to purchase 100 hits of LSD from them for her boyfriend during a sting operation. In fact, the LSD that they sold her was fake. A third NCIS agent testified that the appellant later admitted during an interrogation that she purchased a sheet of LSD for $80 and mailed it to her boyfriend in Chicago. In addition, the agent obtained a handwritten statement from the appellant referring to "speed and acid" when she was thinking about obtaining drugs. Prosecution Exhibit 2. Taken together, the evidence of her guilt on the drug charges was overwhelming. Accordingly, we hold that the military judge did not abuse his discretion in denying the appellant's motion to sever.

### III. Admissibility of Prior Statements

■ The appellant contends that the military judge erred by allowing hearsay statements from her original trial to be used to convict her of perjury. We disagree.

The evidence in question included, in pertinent part, the relevant portions of the appellant's testimony from the original record of trial, which was admitted as Prosecution Exhibit 4. When the exhibit was offered, the trial defense counsel objected on the grounds that the transcribed record of the appellant's testimony was hearsay and that, under Military Rule of Evidence 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), "[a]ny probative value was substantially outweighed by the confusing nature of [the evidence]." Record at 291.

The trial counsel argued that this evidence was not being offered for a hearsay purpose; but, even if it was hearsay, the evidence was still admissible under Mil. R. Evid. 803(6),

the business records exception. After much discussion on the record with counsel, the military judge concluded that the record of trial-apart from the testimony within it—was itself hearsay. Record at 326, 328. Nonetheless, he found that "a foundation for a business record or public record had been laid" and admitted the exhibit. *Id.* at 374.

We review the military judge's admission of this evidence for abuse of discretion. *United States v. Hollis*, 54 M.J. 809, 811 (N.M.Ct.Crim.App.2000), *aff'd*, 57 M.J. 74 (2002). In this instance, we find that the appellant's testimony ·at her first trial was not hearsay. "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement." MIL. R. EVID. 801(d)(2). More significantly, however, it is not hearsay if it is not "offered in evidence to prove the truth of the matter asserted." *Id.* at 801(c). This was a statement the appellant had made in an earlier proceeding that was offered against her in this court-martial. It was not offered to prove the truth of the matter asserted, but to prove that the appellant had committed perjury when she testified at the previous trial.[1]

Since this testimony was not hearsay, it then follows that the verbatim transcript of that testimony in a record of trial cannot be hearsay either. Rather, it is simply the best available evidence to prove that she gave the testimony in question. Even though the record was prepared by a court reporter, this other party did not make an out-of-court statement *independent* of the statement by the original declarant. Thus, the reliability of the official record of trial, as a complete and accurate record of the actual testimony at the court-martial proceeding, is an evidentiary issue that goes to authenticity rather than hearsay.

When a record of trial is properly authenticated, the person authenticating it officially declares that "the record *accurately* reports the proceedings." R.C.M. 1104(a)(emphasis added). Here, the record of trial was properly authenticated on 30 November 1994 by the military judge who presided over the

---

1. Since we find that the evidence in question is not hearsay, the issue that the appellant raised of whether the military judge erred in admitting it under the business or public record hearsay exceptions is moot.

first court-martial proceeding. Prosecution Exhibit 4 at 9. Since the trial defense counsel affirmatively waived any objection as to authenticity, *see* Record at 328, we find the partial record of trial from the first court-martial was completely authentic and admissible. Accordingly, we hold that the military judge did not abuse his discretion in admitting this evidence over the appellant's hearsay objection.[2]

### IV. Sufficiency of the Evidence

The appellant contends that the evidence is legally and factually insufficient to find her guilty of perjury, because the Government failed to prove that her first court-martial was duly constituted or that her former testimony was false under the two-witness rule. We disagree.

We test for legal sufficiency by viewing the evidence in the light most favorable to the prosecution and determining whether any reasonable trier of fact could have found that the essential elements of the offense in question were satisfied beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Jackson*, 54 M.J. 527, 530 (N.M.Ct.Crim.App.2000).

The test for factual sufficiency, on the other hand, entails a *de novo* review of the evidence. *United States v. Sills*, 56 M.J. 239, 240–41 (2002)(per curiam). After taking into account that we have not personally observed the witnesses, we must ourselves be convinced beyond a reasonable doubt of the appellant's guilt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The evidence need not be conflict-free to be legally and factually sufficient beyond a reasonable doubt. *Jackson*, 54 M.J. at 530.

### A. Duly Constituted Court–Martial

One of the elements that must be proven for perjury is that "the accused took an oath or affirmation in a certain *judicial proceeding* or course of justice." MANUAL FOR COURTS-MARTIAL, UNITED STATES (1984 ed.), Part IV, ¶ 57b(1)(a)(emphasis added). The Manual explains that a *judicial proceed-*

*ing* includes a court-martial. MCM, Part IV, ¶ 57c(1). Since a court-martial has only limited jurisdiction to hear cases, the Manual requires a showing that the court-martial was "duly constituted" to try the accused. *Id.* The appellant argues that the Government failed to make such a showing.

At trial, the Government called Senior Chief Legalman Wiederholt to lay the foundation for the introduction to the members of the record of trial from the appellant's first court-martial, Prosecution Exhibit 4. The exhibit consisted of the cover sheet for the record of trial, the front page of the original charge sheet, the transcribed portions of the appellant's testimony relevant to the perjury charge, and the authentication page. The court-martial convening order and back page of the charge sheet containing the referral block were not offered into evidence. The cover sheet, however, indicated that the court-martial was convened by Commander, Naval Base San Francisco, and that the appellant was tried before this court-martial on 19–23 September 1994. Pursuant to the military judge's earlier ruling, the members were not informed of the particular type of court-martial that took place.

In *United States v. Newton*, 22 C.M.R. 534, 1956 WL 4825 (A.B.R.1956), the Government did not introduce the record of trial for the court-martial where the perjury allegedly occurred. Instead, the Government had the court reporter at that proceeding testify. She identified the convening authority and the specific court-martial that he convened. She also indicated that the accused's case was referred to that court-martial for disposition. Finally, she confirmed that the accused's case was, in fact, brought before that court-martial. The Army Board of Review (now Army Court of Criminal Appeals) held that this evidence was sufficient to establish that the court-martial was a duly constituted judicial proceeding, declaring:

> We do not believe that it was essential *under the rules of evidence* for the prosecution to go behind such trial and put into evidence all of the prerequisites for the

**2.** Although the military judge did not expressly rule on the appellant's objection under Mil. R. Evid. 403, we have reviewed the record and concluded that the probative value of this evidence was not substantially outweighed by the dangers of prejudice, confusion, or waste of time.

convening of that general court-martial. The presumption of regularity attaches to the evidence of the doing of such official act, and it is presumed that the general court-martial was properly constituted.

*Id.* at 545.

In *United States v. McQueen,* 49 C.M.R. 355, 357, 1974 WL 14078 (N.C.M.R.1974), we found that the introduction into evidence of a copy of the charges for the general court-martial where the perjury allegedly occurred, a transcript of the accused's testimony, and a stipulation as to their authenticity, were not enough to trigger a presumption of regularity. We then set aside the guilty findings on the perjury charge, because the Government had failed to show that the appellant's first court-martial was duly constituted. We noted, in particular, that the convening authority was never identified and that the convening authority's order appointing the court-martial was never recited or introduced at trial. Although the Government attempted to rely upon the presumption of regularity in *Newton,* we distinguished *Newton* on the grounds that the Army Board of Review had found "sufficient evidence of the *doing* of the official act of convening a court-martial." *Id.* (emphasis added). In contrast, we found that the evidence in *McQueen* failed to establish "a factual basis for concluding that a prior court-martial in which the appellant had testified had been duly detailed and constituted in accordance with a valid order from a legally empowered convening authority." *Id.*

Since *McQueen,* the few decisions addressing the issue of whether to presume a duly constituted court-martial exists in a perjury case have been mixed. In *United States v. Alston,* 11 M.J. 656, 656–57 (A.F.C.M.R.1981) (citation omitted), the Air Force appellate court expressed its belief that "presumptions of regularity applying to the proper constitution of federal courts are not applicable to military courts" and held that the evidence was insufficient to prove that the court-martial in question was a judicial proceeding for purposes of proving perjury. In *United States v. Jordan,* 20 M.J. 977, 978 (A.C.M.R. 1985), the Army appellate court rejected this proposition, pointing out that *Alston* had all

but ignored the Army's earlier decision in *Newton* "which determined that a presumption of regularity attaches to *evidence* of a prior judicial proceeding." *Id.* at 978 (emphasis added). *Newton* differentiated between the rule against presuming court-martial jurisdiction in a pending case and the presumption of regularity as an evidentiary principle to show that a public official properly performed his or her duties at a prior court-martial proceeding. The court in *Jordan* maintained that the reasoning in *Newton* was more persuasive, holding:

> The government met its burden in this case by introducing into evidence portions of the records of trial from both the Nelson and Thompson trials which reflected on the first page of each exhibit the name of the case, the trial date, and the fact that each was tried by special court-martial convened by the Commander, V Corps, United States Army, a general court-martial convening authority. This evidence raises a presumption that both special courts-martial were duly detailed and constituted.

*Id.*

We believe that *Jordan* was correctly decided. Our superior court has stated that "[t]he presumption of regularity entertained in military law is derived from the one in civilian law that attaches to routine administrative acts by officials of the Government." *United States v. Mark,* 47 M.J. 99, 101 (1997). It has long acknowledged the "presumption of regularity in the conduct of governmental affairs." *United States v. Masusock,* 1 C.M.A. 32, 35, 1 C.M.R. 32, 35, 1951 WL 1504 (1951). *See e.g., United States v. Ayers,* 54 M.J. 85, 91 (2000)("An official document, such as the regulation at issue in this case, is entitled to a presumption of regularity [at trial] if it appears regular on its face."); *United States v. Loving,* 41 M.J. 213, 241 (1994)(finding that the credentialing of a mental health evaluator to perform duties as a clinical psychologist raised a presumption at trial that he was qualified to perform those duties); *United States v. Yates,* 28 M.J. 60, 63 (C.M.A.1989)(holding that the lawful ability of the acting convening authority to substitute court-martial members was supported

by a presumption of regularity); *United States v. Porter*, 12 M.J. 129, 132 (C.M.A.1981)(finding that a presumption of regularity at trial attached to lab's handling of specimens); *United States v. Weaver*, 1 M.J. 111, 115 (C.M.A.1975)(finding that the "presumption of regularity inherent in all court proceedings" was *not* overcome by accused's claim that the record of his prior civil conviction was inadmissible because he was not represented by counsel); *United States v. Moschella*, 20 C.M.A. 543, 546, 43 C.M.R. 383, 386, 1971 WL 12804 (1971)(holding that, absent contrary evidence, the convening authority's delegation of authority to a subordinate to modify a convening order "by direction" may be presumed).

The evidence adduced at trial establishes, in pertinent part, that the appellant was previously tried on 19–23 September 1994, at a court-martial convened by Commander Naval Base, San Francisco, for attempted possession and distribution of LSD and that the record of the proceedings was authenticated by CDR Barnett, the military judge.[3] We believe this evidence is sufficient to raise a presumption of regularity with respect to the constitution of that court-martial. The opening session of every court-martial is a tightly scripted affair prescribed by the President in accordance with his authority under Article 36, UCMJ, 10 U.S.C. § 836. *See* R.C.M. 901. As the first order of business, the military judge is required to ensure that the court-martial is *properly constituted*, as reflected in the convening order, the amendments to that order, the referral block of the charge sheet, and the persons present. *See* MCM, App. 8, at A8–1, A8–2, A8–10. A military judge is presumed to act in accordance with that procedural requirement. *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A.1994). The fact that the military judge authenticated the record of trial for the appellant's first court-martial is strong evidence that it was duly constituted in accordance with the direction of the convening authority, Commander Naval Base, San Francisco.

## B. Two–Witness Rule

■ The Government alleged that the appellant committed perjury when she testified at her first court-martial that "she did not *believe, suspect or know* that the substance she purchased on or about 15 March 1994 was [LSD]." Charge Sheet (emphasis added). The appellant argues that the only evidence offered to prove the falsity of that statement was from NCIS Special Agent Sullivan, who testified that the appellant admitted she intended to purchase LSD. According to the appellant:

> No other direct evidence was presented concerning [her] *state of mind* at the time she bought the drugs. Nor can it be plausibly argued that [her] statement to Agent Sullivan constituted corroboration since nothing in that statement refers to her *state of mind* at the time of the purchase or makes specific reference to 'lysergic acid diethylamide' as charged in the specification.

Appellant's Brief of 19 Sep 2000 at 20–21 (emphasis added).

With respect to the proof required for perjury, the Manual explains:

> The falsity of the statement cannot be proved by the testimony of a single witness unless that testimony *directly contradicts* the statement and is corroborated by other evidence either direct or circumstantial, tending to prove the falsity of the statement.

MCM, Part IV, ¶ 57c(2)(c)(emphasis added). This provision is essentially the *two-witness rule* to which the appellant refers. The rule itself was a requirement under the common law that at least two witnesses provide *direct* evidence that the statement in question is false before an accused can be convicted of perjury.[4] *United States v. Hogue*, 45 M.J.

---

**3.** The preferred practice would have been to introduce a copy of the convening order and the referral page of the charge sheet, with the relevant portions of the record of trial identifying the military judge, counsel and members at the court-martial to establish conclusively that the court-martial was duly constituted.

**4.** "The historical underpinnings of the two-witness rule reveal that the purpose of the rule is to ensure that a defendant in a criminal trial is not convicted except upon sufficient, reliable information.... Because equally honest witnesses could have differing recollections of the same event, a conviction was not to 'rest entirely upon an oath against an oath.'" *Hogue*, 45 M.J. at

300, 301 (1996). In this case, Special Agent Sullivan could only testify that the appellant had made a prior statement that was inconsistent with her testimony at the first court-martial. Since, she had no *personal* knowledge about what the appellant actually knew, her testimony was only "circumstantial evidence that one of the two statements made by [the] appellant is false," and was not direct evidence that the statement alleged on the charge sheet was false. *United States v. Olivero*, 39 M.J. 246, 251 (C.M.A.1994).

The Manual provides that perjury may be shown by circumstantial evidence when the falsity of the alleged statement is "not susceptible of direct proof." MCM, Part IV ¶ 57c(2)(c). Such is the case here. As the appellant pointed out, what she actually believed, suspected, or knew goes to her *state of mind*. It is not something that a witness can observe. *See Hogue*, 45 M.J. at 303 (noting that knowledge is not susceptible of direct proof with respect to the accused's *knowing* use of illegal drugs); *United States v. Walker*, 6 C.M.A. 158, 163, 19 C.M.R. 284, 289, 1955 WL 3435 (1955)(affirming perjury conviction on basis of circumstantial evidence when the accused falsely testified that he did not *see* a fellow soldier engage in fights with other German nationals, because "[i]n many instances the only effective method by which belief, remembrance, impression, judgment, or opinion may be proved is by circumstantial evidence."). *But see United States v. Guerra*, 13 C.M.A. 463, 469, 32 C.M.R. 463, 469, 1963 WL 4583 (1963)(reversing perjury conviction due to the absence of *direct evidence* to contradict allegedly false testimony by accused that he had no *knowledge* concerning theft of certain Government property). We, therefore, conclude that the falsity of the appellant's testimony must be established indirectly from other evidence.

As we stated earlier, the circumstantial evidence that the Government introduced to prove the falsity of her testimony was overwhelming. In addition to the appellant's admission to Special Agent Sullivan that she attempted to purchase LSD on 15 March 1994, there was her handwritten statement, Prosecution Exhibit 2, referring to "speed

and acid" at the time she first thought about obtaining drugs, and the detailed testimony from the undercover agents about the circumstances surrounding her attempted purchase. The totality of this evidence is legally and factually sufficient to prove beyond a reasonable doubt that the appellant thought she was purchasing LSD and, therefore, committed perjury at her first trial when she expressly denied it.

## V. Multiplicity

The appellant contends for the first time that the charges of attempted possession of LSD with the intent to distribute and attempted distribution of LSD are multiplicious. We disagree.

 The failure at trial to object that charges are multiplicious waives the objection in the absence of plain error. *United States v. Carroll*, 43 M.J. 487, 488 (1996); R.C.M. 905(e). Plain error requires a showing that an error actually occurred, that it was plain or obvious, and that it materially prejudiced the substantial rights of the accused. *United States v. Reist*, 50 M.J. 108, 110 (1999).

 Citing our superior court's holding in *United States v. Savage*, 50 M.J. 244, 245 (1999), the appellant argues that the attempted possession of LSD with the intent to distribute is necessarily included in the charge of attempted distribution of LSD. We believe *Savage* is distinguishable. The court found that the charges of possession of marijuana with the intent to distribute and distribution of the same marijuana were multiplicious because they occurred on the *same* day. However, in a subsequent decision involving the very same issue, our superior court held that these charges were *not* multiplicious when the accused possessed the illegal drugs for two days before he distributed it. *United States v. Heryford*, 52 M.J. 265, 267 (2000). "During that period, he was at liberty to use it himself, destroy it, or distribute all or any part of it to anyone." *Id.* In other words, the possession and distribution of illegal drugs in that case did not involve the *same* conduct.

303 (quoting R. Perkins and R. Boyce, *Criminal Law* 523 (3d ed.1982)).

The facts in this case more closely approximate the circumstances in *Heryford* than *Savage*. The appellant attempted to possess LSD at the moment she purchased a sheet of fake LSD from the undercover agents. She attempted to distribute the LSD sometime later when she mailed the sheet to a friend. These were clearly discrete acts. The purchase of the fake LSD did not lead inexorably to the mailing of it. In the intervening period, the appellant could have elected to destroy or discard the contraband that she had just purchased. Finding no plain error, we hold that the multiplicity objection was waived since it was not raised at trial.

### VI. Conclusion

We reviewed the remaining assignments of error[5] and found them to be without merit. Of note, we concluded that a bad-conduct discharge was not inappropriately severe in view of the nature and seriousness of the offenses and the character of the appellant. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). Accordingly, we affirm the findings and sentence, as approved on review below.

Senior Judge OLIVER and Senior Judge FINNIE concur.

---

**5.** II. THE MILITARY JUDGE ERRED BY ALLOWING ANY MENTION OF [THE APPELLANT'S] ORIGINAL TRIAL AT THE RETRIAL.

VI. A SENTENCE TO AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE.