UNITED STATES

v.

Jonathan F. BELL, 131 66 5486, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 94 01078.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 21 Oct. 1993.

Decided 30 June 1995.

Maj R.K. Stutzel, USMC, Appellate Defense Counsel.

LCDR David B. Auclair, JAGC, USN, Appellate Government Counsel.

Maj Charles H. Pangburn III, USMCR, Appellate Government Counsel.

Before LARSON, C.J., WELCH, Senior Judge, and McLAUGHLIN, J.

LARSON, Chief Judge:

Contrary to his pleas, the appellant was convicted by general court-martial, military judge sitting alone, of one specification of perjury, in violation of Article 131, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 931. He was sentenced to confinement for 6 months and a bad-conduct discharge. The convening authority approved the sentence as adjudged. On appeal, the appellant claims that the evidence was legally and factually insufficient to support the findings of guilty. We agree.

### THE FACTS

This was the appellant's second conviction by general court-martial. At his first, in April 1993, he was convicted, *inter alia,* of conspiring with Sergeant Keeton and Private Benson to make a false identification card and, in a separate specification, to forge checks. He pleaded guilty to these offenses, and after an inquiry into the providence of his pleas, the military judge found him guilty. During the inquiry, the appellant acknowledged under oath that Sergeant Keeton was part of the conspiracy. Prosecution Ex. 3.

In July 1993, the appellant was called to testify at the Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation hearing concerning conspiracy charges against Sergeant Keeton [hereinafter "the Article 32 hearing"]. Under oath again, and in response to a leading question from the Government counsel as to whether Keeton was involved in the conspiracy, the appellant answered, "No, sir." In response to a question from Keeton's defense counsel as to whether Keeton was part of any agreement with the appellant to forge checks, the appellant again replied, "No, sir." He also testified to his opinion that Keeton did not know whether he and Benson were going to forge checks or had actually done so. Despite these denials, the appellant did implicate Keeton in criminal activity by testifying that Keeton told Benson and him how to make a false identification card, told them how to use that card to cash forged checks, and gave Benson some blank checks belonging to another person. He stated further that he and Benson forged the checks on their own without further involvement by Keeton and that Keeton "had no idea" what they were doing. Prosecution Ex. 6.

In this court-martial, the appellant faced two specifications of perjury, which were charged in the alternative. Specification 1 alleged perjury at the Article 32 hearing in that he testified falsely that Keeton was not part of the conspiracy to forge checks and, in addition, that Keeton was unaware that the appellant and Benson forged checks or were going to do so. Specification 2 alleged that the appellant perjured himself during the providence inquiry at his own general court-martial by stating that Keeton was part of the conspiracy to forge checks. The trial counsel acknowledged that the appellant could not be guilty of both specifications and argued that he was guilty only of the first specification. The military judge found the appellant guilty of perjury at the Article 32 hearing and not guilty of perjury at his earlier court-martial.

In addition to transcripts of the appellant's sworn testimony at the Article 32 hearing and of his sworn responses to the guilty-plea inquiry at his own court-martial, the evidence against him consisted of his pretrial statement to an agent of the Naval Investigative Service and the testimony of Private Benson. In his statement, the appellant described Keeton's role in the check-writing scam in a manner consistent with his testimony at the Article 32 hearing: that Keeton told the other two how to commit the crimes but was not involved in the commission of them. Prosecution Ex. 1. He did add that Keeton had told the other two that he wanted a "cut" of the proceeds from the forged check venture, but he never used the words "conspiracy" or "agreement." *Id.*

Benson's testimony as to Keeton's role was likewise consistent with the appellant's testimony at the Article 32 hearing except that, in response to a leading question, Benson said that Keeton was part of the conspiracy. Record at 54. He also stated that he "guessed" Keeton knew what the other two were going to do because he knew they had the blank checks. *Id.* at 61. Finally, he stated in response to yet another leading question, from the appellant's defense counsel, that he "guessed" the appellant would be right if he had testified that Keeton didn't know anything about the forgeries. *Id.*

The appellant testified in his own defense. He stated that he never intended to mislead anyone at the Article 32 hearing and that he erroneously, but honestly, believed Keeton was not part of the conspiracy because he had no part in the actual cashing of the forged checks. Since then, his counsel had explained the law of conspiracy to him, and he now understood his mistake. Equipped with that understanding, he conceded that Keeton was indeed part of the conspiracy. Record at 66. He continued to explain that he told the military judge at his earlier trial that Keeton was part of an agreement to forge checks because he believed that to be true. However, his understanding of what a

conspiracy is had changed between the two events. *Id.* at 72. He also testified, as an additional explanation for his two inconsistent statements, that he was "confused." *Id.* at 65. Finally, he denied being scared of Keeton or, by implication, possessed of any motive to shade his testimony in Keeton's favor. *Id.* at 68.

## THE LAW

The crime of perjury is committed by giving false testimony under oath that is material to an issue or matter of inquiry. Manual for Courts–Martial, United States [MCM], 1984, Part IV, ¶ 57. Conviction for perjury may be based on testimony given at an Article 32, UCMJ, hearing. *United States v. Crooks*, 12 C.M.A. 677, 31 C.M.R. 263 (1962). The general rule is that a witness may commit perjury only by testifying falsely to facts, i.e., matters whose falsity is susceptible of direct proof. 60A AM.JUR.2D *Perjury* § 23 (1988). This is the rule in the Federal courts as well. *United States v. Endo*, 635 F.2d 321 (4th Cir.1980). Under military law, however, the false testimony may consist of beliefs, judgments, impressions, or opinions. MCM, 1984, Part IV, ¶ 57c(2)(a).[1]

The three key elements of perjury that concern us are (1) the testimony has to be false, (2) it has to be material, and (3) the accused must not believe it to be true at the time it is given. *Id.* at ¶ 57b. The MCM amplifies the elements by stating that the false testimony must be "willfully and corruptly" given. To be willful and corrupt, the testimony generally must be accompanied by, or imply, an intent to deceive or other bad purpose (although such a specific intent is not, itself, an element of the offense). *United States v. Zimmek*, 23 C.M.R. 714, 721 (A.F.B.R.1956); 60A AM.JUR.2D *Perjury* § 24 (1988).

Furthermore, under military law, whether the testimony is material is an inter-

---

1. The perjury in the case of an opinion or belief is not established by proof that the opinion is erroneous. It is only established by proof that the opinion is *falsely* held, i.e., that the witness in fact holds an opinion contrary to the one to which he is testifying. *See* MCM, 1969, ¶ 210 (which contains an explanation and illustration of the foregoing point that does not appear in the 1984 MCM).

locutory question of law, not fact. MCM, 1984, Part IV, ¶ 57c(2)(b). The test used by the courts to determine materiality is whether the alleged perjured testimony could have influenced the tribunal that received it. *United States v. Kelly*, 540 F.2d 990, 993 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *United States v. Moye*, 14 C.M.R. 720 (A.F.B.R. 1954); MODEL PENAL CODE § 241.1(2) (1980).

■■■■ In addition, the law imposes special requirements of proof for a perjury conviction. The falsity of the testimony cannot be proved by circumstantial evidence alone, except with respect to matters which by their nature are not susceptible of direct proof. Also, the falsity of the testimony cannot be proved by the testimony of a single witness unless that testimony directly contradicts the statement and is corroborated by other evidence either direct or circumstantial, tending to prove the falsity of the statement—the so-called "two-witness" rule.[2] *United States v. Olivero*, 39 M.J. 246 (C.M.A.1994); MCM, 1984, Part IV, P 57c(2)(c). If proof of falsity is based on the corroborated testimony of only one witness, it is not sufficient that the falsity be merely inferred from his testimony. It must be in direct conflict and must be in definite and positive terms. *United States v. Guerra*, 13 C.M.A. 463, 32 C.M.R. 463 (1963). Finally, there is support for the position that the two-witness rule (or the one-witness-plus-corroboration rule) does not apply when the falsity can be proved by documentation or written testimony springing from the alleged perjurer himself. *United States v. Jordan*, 20 M.J. 977 (A.C.M.R.1985).

### STANDARD OF REVIEW

■■■■ In order to affirm the findings of guilty to this offense, we must be find the evidence of record to be legally and factually sufficient. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is

whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. To satisfy the standard for factual sufficiency, we must be convinced by the evidence of record of the appellant's guilt beyond reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

### SUFFICIENCY OF THE EVIDENCE

Applying the foregoing principles to the facts in this case, we find the evidence legally insufficient to establish the falsity of the appellant's testimony at the Article 32 hearing. In addition, we are not convinced that the appellant actually believed he was giving false testimony or that his testimony was given willfully and corruptly, i.e., for the purpose of deceiving the investigating officer or subverting the integrity of the process. Our reasoning is set forth below.

#### False Testimony (Part I)

■■■■ First, as to the question of whether the appellant's testimony was proved to be false, we note that the first piece of false testimony which he is charged with giving, i.e., that Keeton was not part of the conspiracy to forge checks, is no more than a legal conclusion.[3] The appellant is not charged with testifying falsely concerning any of the factual details of what Keeton actually did— only that what Keeton did, didn't add up to conspiracy. Specifically, he testified that Keeton taught Benson and him how to prepare a false identification card and how to use it to cash forged checks. He added that Keeton also gave them some blank checks. Whether those acts make Keeton a conspirator to forge checks is a legal question. Indeed, based on the facts we know from this record, whether Keeton was a conspirator or a mere aider and abettor is a question over which even reasonable lawyers may differ.

---

2. The rule only applies to proof of the **falsity** of the testimony. The accused's **knowledge** of the falsity of his testimony may be proved by circumstantial evidence. *United States v. Guerra*, 13 C.M.A. 463, 32 C.M.R. 463 (1963).

3. We attach the "legal" label to this conclusion with some misgiving, coming as it does from a

witness who is not trained in the law. Although the appellant was provided a short course in the law of conspiracy by the military judge at his guilty plea inquiry, we cannot assume that he remained armed with that knowledge when he answered leading questions posed by courtroom advocates at the Article 32 hearing.

█ The prosecution's primary evidence to show that the appellant's testimony was false was his sworn admission that Keeton was part of the conspiracy, made to the military judge while attempting to establish the providence of his pleas at his earlier court-martial. Yet, this conclusion, although it is contrary to the appellant's testimony at the Article 32 hearing, adds very little to the evidentiary picture. The mere fact that each of these two statements was in direct conflict with the other did not, by itself, establish the falsity of either, and it did not relieve the prosecution of the obligation to produce direct evidence proving that one version was false.[4] *Phair v. United States,* 60 F.2d 953 (3d Cir.1932); *United States v. Evans,* 4 C.M.R. 369 (A.B.R.1952).

█ Moreover, we seriously question the sufficiency of this evidence to prove perjury for another reason. The law against perjury punishes the intentional subversion of the judicial process through deliberately false testimony; it is not a trap for the unwary or for those unsophisticated in the law. When the appellant testified at the Article 32 hearing that Keeton was not part of the conspiracy, he was responding to leading questions from legally-trained courtroom advocates each trying to prove a point. When he swore to the contrary conclusion at his own court-martial, he was responding to questions from a military judge—presumably on advice of counsel at his side—designed to establish the providence of his guilty plea. Yet, there is no inconsistency between the appellant's two versions of the **facts** of Keeton's involvement! The fact that, on different occasions, he drew different conclusions from these same facts tells us more about the purposes of the questions and the proceedings than it does about the appellant's guilt of perjury.[5]

The only other evidence that the appellant's testimony at the Article 32 hearing was false is Benson's testimony. Like the appellant, Benson was not trained in the law. His affirmative answer to a leading question from the trial counsel asking whether he was part of a conspiracy with the appellant and Keeton is not direct, or even meaningful circumstantial, evidence that proves the falsity of the appellant's testimony. Like the appellant's before him, Benson's conclusion that Keeton was a conspirator did not make it so, nor did it disprove the appellant's contrary conclusion.

Finally, there is no direct evidence that Keeton was actually part of the conspiracy. We do not know from this record whether he was ever convicted of the same conspiracy or that he ever admitted to being part of it. We have only inconsistent conclusions of law as to Keeton's involvement—made by two non-lawyers—which constitute, at best, very weak circumstantial evidence that he was part of a conspiracy. This evidence is insufficient to prove perjury as a matter of law.

### False Testimony (Part II)

█ Likewise, the falsity of the second piece of testimony the appellant is convicted of giving, i.e., that Keeton was not aware of his and Benson's check-forging activities, is not supported by the evidence. Like the conclusion that Keeton was not a conspirator, this testimony by the appellant is not a factual matter. It is no more than the appellant's opinion or belief based on the circumstances known to him at the time. It is true, as previously noted, that testimony need not be purely factual to be the subject of perjury. However, the falsity of the appellant's opinion or belief as to what Keeton knew still had to be proven.

In this case, it was not proven. For this part of the testimony, the Government did not even have the benefit of a contrary statement by the appellant himself from his prior

---

4. Contrast this situation with that in *United States v. Jordan,* 20 M.J. 977 (A.C.M.R.1985), where that accused's prior assertions of **fact** made in a stipulation of fact at his earlier court-martial, coupled with the testimony of the trial counsel to whom he admitted the same facts in a pretrial interview, were sufficient to sustain his conviction for perjury when he denied those same facts at the court-martial of an accomplice.

5. We must emphasize that we do not mean to imply any criticism of the judge advocates who posed the questions. Each was simply doing his job, and doing it well. Our point is that answers to questions, which amount to no more than conclusions or deductions drawn from given facts, may not be a proper basis for perjury. 4 WHARTON'S CRIMINAL LAW § 621 (14th ed. 1981).

court-martial. During the providence inquiry, he made no reference to what Keeton did or did not know. Prosecution Ex. 3. Likewise, in his pretrial statement, the appellant expressed no opinion as to Keeton's knowledge of the check-forging activities of the other two. Prosecution Ex. 1. The primary evidence that Keeton was aware of the check forgeries came from Benson. Yet, his testimony on this point is no more than his own belief based on the facts that Keeton gave them the blank checks and instructed them how to commit the crime. Like the appellant's, Benson's belief is based on an inference drawn from the circumstances known to him and, in that sense, is just as valid—but no more so. Such an opinion or belief by another, under these circumstances, is not sufficient, by itself, to establish the falsity of the appellant's contrary opinion or belief. Moreover, even Benson's testimony on this point wavered during cross-examination. He conceded that the appellant may have been correct in his testimony that Keeton did not know about the forgeries. Record at 61. His testimony was, in other words, equivocal—not definitive or positive. *Guerra*, 32 C.M.R. at 467.

In addition to Benson's testimony, the record does contain facts as to Keeton's involvement from which one could infer his awareness of check-forging by Benson and the appellant. Most of these came from the appellant himself during the Article 32 hearing. Yet, they are at best circumstantial evidence of Keeton's knowledge and, as clearly demonstrated by counsel's skillful cross-examination of Benson, are subject to different interpretations. A conviction for perjury can not rest solely on such evidence.

■ Finally, in concluding that the falsity of both parts of the appellant's allegedly perjurious testimony were not proven, we must add that we doubt that it could have been proven by any evidence. The very nature of the questions posed and the answers sought that form the basis for this perjury conviction defies proof to the degree necessary to support perjury. As noted, both pieces of testimony amount to deductions drawn from given facts—facts that obviously may yield different conclusions depending on who is interpreting them. The history of perjury litigation is consistent with the requirement that such questions must inherently rule out confusion, ambiguity, mistake, or differing meaning between questioner and answerer in order to serve as a basis for the crime. *United States v. Dunnigan*, — U.S. ——, 113 S.Ct. 42, 121 L.Ed.2d 13 (1993); *United States v. Boone*, 951 F.2d 1526 (9th Cir.1991).

## Knowingly False Testimony

■ Finally, proof of perjury of both portions of the appellant's testimony falls short with respect to another element—the appellant's knowledge that his testimony was false. The prosecution was required to prove not only that the testimony was false, i.e., that Keeton was in fact a conspirator and was in fact aware of the check-forging activity, but also that, at the time he testified the appellant **knew** that his testimony was untrue.

During his testimony at the Article 32 hearing, the appellant provided a plausible basis for both statements he is accused of giving falsely. He explained that after teaching the two Marines the tricks of the check-forging trade and giving them a "starter" set of blank checks, Keeton was no longer involved. All checks were forged by the appellant and Benson, and Keeton received no proceeds. To the appellant's knowledge, Keeton did not know where, when, how, or even if the other two actually forged and cashed checks. His testimony as to the precise **facts** of Keeton's involvement was consistent with his pretrial statement and with Benson's testimony. The appellant's conclusions that Keeton was not part of the conspiracy to forge checks and was unaware of what the other two were doing seem to flow logically from his rendition of those facts, none of which was alleged to have been falsely stated. This explanation supports rather than undermines the conclusion that the appellant **believed** he was testifying truthfully at the Article 32 hearing.

## Willful and Corrupt Testimony

■ Aside from the questions of whether the appellant's testimony was false and known by him to be false, we are also not convinced that it was given for a willful

and corrupt purpose. As noted earlier, the law against perjury is intended to punish the intentional subverting of the judicial process. Testimony is not perjurious if it's falsity is the result of confusion or mistake. *Dunnigan.* It must be accompanied by an intent to mislead. *Umbriaco v. United States,* 258 F.2d 625 (9th Cir.1958). In this case, there is no indication of any attempt or intention to subvert the process. Rather than exonerate Keeton, the appellant clearly **implicated** him in the scheme by revealing the factual details of his involvement. Moreover, those details are perfectly consistent with his own pretrial statement, with Benson's testimony and, as far as we can deduce, with the Government's case against Keeton. We conclude, therefore, that his testimony was not given with any intent to deceive the investigating officer as to Keeton's role in the transaction. In other words, it was not given for any willful and corrupt purpose.[6]

## DISPOSITION

For the reasons stated above, we hold that the evidence of record is legally and factually insufficient to support the findings of guilty. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Accordingly, the findings and the sentence are set aside and the charge and remaining specification are dismissed.

Senior Judge WELCH and Judge McLAUGHLIN concur.

---

**6.** Although it is not necessary to decide this question, we have grave doubts that the appellant's conclusion about Keeton's role as a conspirator and his belief as to Keeton's knowledge were even **material** to the Article 32 hearing. The purpose of the hearing is to determine the **facts** concerning the charges. *United States v. Cunningham,* 12 C.M.A. 402, 30 C.M.R. 402 (1961); MCM, ¶ 405(e). What Keeton said, what he did, how he behaved, etc. are material to that end. The appellant's beliefs, opinions, and conclusions drawn from those facts may not be.